**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 1100 ADAMS STREET CONDOMINIUM ASSOCIATION, INC., | : <br> : <br> : Civil Action No. 14-2203 (SDW) <br> : |
| Plaintiff, | : <br> : **SUPPLEMENTAL OPINION FOR** <br> : **REPORT AND RECOMMENDATION** <br> : |
| v. | : <br> : |
| MT. HAWLEY INSURANCE COMPANY, et al., | : <br> : <br> : |
| Defendants. | : <br> : |

**ARLEO**, Magistrate Judge.

This matter comes before the Court on the motion of Plaintiff 1100 Adams Street Condominium Association, Inc. ("1100 Adams") to remand this declaratory judgment action to the Superior Court of New Jersey, Hudson County, pursuant to 28 U.S.C. § 1447. (Dkt. No. 13, Mot. to Remand). Defendant Mt. Hawley Insurance Company ("Mt. Hawley") initially removed this action on the basis of diversity jurisdiction in accordance with 28 U.S.C. § 1332. (See Dkt. No. 1, Notice of Removal). Oral argument was heard on October 1, 2014. This opinion supplements the Court's ruling from the bench on that date. Upon consideration of the parties' submissions and oral arguments in connection with this motion and for the reasons set forth herein, the undersigned respectfully recommends that 1100 Adams' motion to remand be **GRANTED**.

## I.    BACKGROUND

For the purposes of this motion, the Court accepts as true the allegations contained in the Complaint. This declaratory judgment action has its origins in a May 2012 construction defects lawsuit (the "State Suit") filed in Hudson County Superior Court by 1100 Adams against Tarragon Corporation ("Tarragon") and a number of subcontractors and fictitious parties. (Dkt. No. 1-1, Compl., at ¶ 13). 1100 Adams is a New Jersey non-profit corporation that "is responsible for the operation, administration, management, and regulation of the 1100 Adams Street Condominium, Inc. complex located in Hoboken, New Jersey." (Id. at ¶ 3). This complex is a six-story, 76-unit building with a number of common elements, "includ[ing] the exterior of the building, the façade, flashing and other common property." (Id. at ¶ 4). Tarragon is a Nevada corporation with its principal place of business in New York, New York. [1] (Dkt. No. 1, Notice of Removal, at ¶ 3). Tarragon served as the developer of the condominium project, and 1100 Adams alleges that Tarragon "dominated and controlled" 1100 Adams during the earlier years of its existence. (Dkt. No. 1-1 at ¶¶ 5, 8).

Sometime later, however, 1100 Adams alleges that it took control of Tarragon's Board, at which point 1100 Adams was made aware of a litany of defects in the design and construction of the building's common areas. (See id. at ¶ 9). These alleged defects caused "water intrusion," which resulted in the damages that form the basis of 1100 Adams' claims in the underlying State Suit. (Dkt. No. 1-1 at ¶¶ 10-12; see generally Dkt. No. 1-2, Construction Defects Compl.).

Eventually, a dispute arose over whether certain insurance policies covered the damage caused by these defects. Two such policies issued by Mt. Hawley to Tarragon are the subject of

---

[1] There is apparently some question as to whether Tarragon is a Nevada or New York corporation. (See Dkt. No. 1, Notice of Removal, at n.2). In either case, however, the diversity jurisdiction analysis remains the same.

the instant declaratory judgment action. (Id. at ¶ 6). Mt. Hawley, an Illinois corporation with its principal place of business in Peoria, Illinois, provided two commercial general liability insurance policies to Tarragon. (Id.; Dkt. No. 1, Notice of Removal, at ¶ 2). After 1100 Adams obtained a default judgment against Tarragon in the underlying State Suit on January 31, 2014, 1100 Adams was made aware of Mt. Hawley's status as Tarragon's insurer. (Dkt. No. 1-1 at ¶ 15). Upon learning of Mt. Hawley, 1100 Adams requested that Mt. Hawley provide a defense or indemnity on behalf of Tarragon, which Mt. Hawley declined to do. (Id. at ¶¶ 15-16). Mt. Hawley's denial of coverage stems from its interpretation of various provisions contained in the policies. (Dkt. No. 1, Notice of Removal, at ¶ 11).

Mt. Hawley's coverage denial ultimately led 1100 Adams to file this declaratory judgment action pursuant to N.J.S.A. §§ 2A:16-52, et seq., on March 4, 2014, in Hudson County Superior Court, in which 1100 Adams seeks "a declaration that Mt. Hawley is obligated to provide a defense to and to indemnify Tarragon" in the State Suit. (Id. at ¶¶ 1, 12; Dkt. No. 1-1 at ¶¶ 17-23). On April 7, 2014, Mt. Hawley filed a notice of removal on the basis of diversity jurisdiction. (Dkt. No. 1 at ¶¶ 14-21). On May 5, 2014, 1100 Adams filed the instant motion to remand. (Dkt. No. 13). For the reasons that follow, the Court recommends that Plaintiff 1100 Adams' motion to remand be **GRANTED**.

## II. DISCUSSION

### A. Diversity Jurisdiction

Under 28 U.S.C. § 1447(c), a case removed from state court to federal court must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The defendant seeking removal bears the burden of demonstrating "the existence and continuance of federal jurisdiction." Steel Valley Auth. v. Union Switch and Signal

3

Div., 809 F.2d 1006, 1010 (3d Cir. 1987). This burden is a heavy one, since removal statutes such as § 1447 "should be strictly construed and all doubts should be resolved in favor of remand." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985).

Mt. Hawley removed this case on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), which requires complete diversity of citizenship between plaintiffs and defendants, as well as an amount in controversy of more than $75,000. At oral argument on October 1, 2014, neither party disputed that subject matter jurisdiction exists in this case. This Court agrees that it has jurisdiction pursuant to § 1332(a)(1). The question now becomes whether the Court should nonetheless use its discretion and decline to exercise jurisdiction over this case.

## B. Abstention Under the Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The use of the word "may" in the statute signifies the discretionary nature of federal jurisdiction over declaratory judgment actions. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942). This discretion is, of course, in stark contrast to the general rule that federal courts are compelled to exercise the jurisdiction that Congress has given them. Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014). Although the DJA gives district courts this "unique and substantial discretion" to exercise or decline to exercise jurisdiction over declaratory judgment actions, the exercise of that discretion must be sound. See Wilton v. Seven Falls Co., 515 U.S. 277, 286-88 (1995).

### 1. Applicability of DJA Abstention in Removed Diversity Cases

Before reaching the analytical framework for abstention under the DJA, the Court must first determine whether the DJA is applicable in the first instance. Mt. Hawley argues that the

4

Court lacks the discretion to abstain from exercising jurisdiction over this action because neither the Complaint nor the Notice of Removal invokes or refers to the Declaratory Judgment Act. This Court disagrees.

The procedural posture in Reifer—which was virtually identical to the procedural posture of this case—is instructive. There, the plaintiff had initially filed an action solely for a declaratory judgment under the Pennsylvania Declaratory Judgments Act, making no mention of the DJA in her complaint. Reifer, 751 F.3d at 132. The Third Circuit apparently assumed that the DJA still applied even though neither party ever invoked it, relegating its analysis of the issue to a footnote: "Although Reifer's declaratory judgment claim was originally brought in state court under Pennsylvania law, the question of whether to exercise federal jurisdiction to adjudicate the controversy became a procedural issue under federal law." Id. at 134 n.4. In other words, it was irrelevant that the plaintiff did not invoke the DJA in the original state court action, since federal procedural law—here, the DJA—controlled the issue of whether the district court should exercise jurisdiction. See also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only."); Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 351 (3d Cir. 1986) ("The [DJA] . . . provides a unique procedural remedy to the litigants that choose to utilize it."). Thus, a plaintiff need not invoke the DJA in its state court declaratory judgment action in order for the DJA to apply when the case is later removed to federal court.

Similarly, the Court rejects Mt. Hawley's contention that the DJA is inapplicable because it removed this case on the basis of diversity jurisdiction and not pursuant to the DJA. The DJA is not jurisdictional in nature—there must always exist an independent basis for federal jurisdiction whenever the court entertains an action for declaratory relief. See Rauscher, 807 F.2d at 351-52

5

("Every case brought under the [DJA] still must fall within federal jurisdiction and present a justiciable issue. In the statutory language of [28 U.S.C.] § 2201, the remedy may only be granted whenever there is an "actual controversy" based upon independent jurisdictional grounds."). Thus, a declaratory judgment action is never removed on the basis of the DJA; the DJA merely provides a remedy when there exists an independent basis for jurisdiction over the case.[2]

The Court therefore finds that where, as here, the plaintiff files an action solely for declaratory relief in state court and does not specifically invoke the DJA, the district court retains its discretion to decline jurisdiction when the case is later removed to federal court on the basis of diversity jurisdiction.[3]

## 2. The Abstention Doctrine Under the DJA

As has been noted, the DJA affords the district court substantial discretion to decline jurisdiction over declaratory judgment actions. See Wilton, 515 U.S. at 286-88. In order to provide guidance as to how the district courts should properly exercise that discretion, the Supreme

---

[2] In support of its position, Mt. Hawley relies upon the case of Edwards & Caldwell LLC v. Gulf Ins. Co., No. 05-2231, 2005 WL 2090636 (D.N.J. Aug. 29, 2005). That case, however, was not only decided long before Reifer, but it is also distinguishable from the case at bar. Unlike the single-count complaint for declaratory relief in this case, the plaintiff in Edwards filed a complaint in New Jersey Superior Court with six separate claims, only one of which was for a declaratory judgment that insurance coverage existed. Id. at *2. That fact is of some significance, since it would have made little sense for the Court to conclude that it had discretion to remand the entire case on the basis of the DJA when the DJA was applicable to only one count. Indeed, in a case presenting similar facts to those of Edwards, this Court specifically noted that the plaintiff's suit was "not one solely for declaratory judgment." Curtiss-Wright Corp. v. CNA Fin. Corp., No. 11-4416, 2012 WL 1044493, at *6 (D.N.J. Jan. 26, 2012), Report & Recommendation adopted at 2012 WL 1064536 (D.N.J. Mar. 28, 2012).

[3] See also Owen v. Hartford Ins. Co., No. 14-924, 2014 WL 2737842, at *5 (D.N.J. June 17, 2014); QBE Ins. Corp. v. ACE Ins. Co., No. 09-4691, 2011 WL 3510849, at *2 n.1 (D.N.J. July 14, 2011); Hartford Life Ins. Co. v. Rosenfeld, No. 05-5542, 2007 WL 2226014, at *4 (D.N.J. Aug. 1, 2007); Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 261 n.3 (4th Cir. 2013) ("We treat a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act."); Sankyo Corp. v. Nakamura Trading Corp., 139 F. App'x 648, 650 n.6 (6th Cir. 2005).

6

Court first suggested a multifactor analysis in its decision in Brillhart. At the outset, the Brillhart Court emphasized that district courts should be cautious in exercising jurisdiction over a declaratory judgment action when there exists a concurrent suit in state court presenting the same issues and involving the same parties. Brillhart, 316 U.S. at 495. The Court then went on to suggest a number of factors that should be considered before declining jurisdiction in such a situation, such as the scope of the state court proceeding, whether all of the claims are capable of adjudication in state court, and "whether necessary parties have been joined." Id. The Court further stressed that its list was non-exhaustive and could change on the facts of a given case. See id.

Following Brillhart, the Third Circuit has identified the following factors as generally applicable in all declaratory judgment cases: (1) whether a declaration in federal court would "resolve the uncertainty of obligation which gave rise to the controversy"; (2) the convenience of the parties; (3) whether there is a public interest in resolving the uncertainty of obligation; and (4) whether there are other relatively convenient remedies available. United States v. Pa., Dept. of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991). Additionally, the Third Circuit has also identified three additional factors that should be considered in the insurance coverage context:

> 1. A general policy of restraint when the same issues are pending in a state court;
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; [and]
> 3. Avoidance of duplicative litigation.

State Auto Ins. Cos. v. Summy, 234 F.3d 131, 134 (3d Cir. 2000). In finding that the district court should have declined jurisdiction, the Summy Court emphasized that when a declaratory judgment action involves an unsettled or close issue of state law, the federal courts should be hesitant to

7

exercise jurisdiction.  Id. at 135.  In addition, the Court noted that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum."  Id. at 136.

Although the factors enumerated in Summy have endured, the Third Circuit recently had occasion to revisit its formulation of the abstention doctrine under the DJA in the context of insurance coverage.  See generally Reifer v. Westport Ins. Corp., 751 F.3d 129 (3d Cir. 2014).  In its affirmance of the district court's decision to decline jurisdiction, the court specifically discussed the weight to be accorded to the presence or absence of pending parallel proceedings in state court. Id. at 141.  While it had already been well established that the presence of a parallel state court proceeding does not automatically require the district court to decline jurisdiction, see id. at 143, the court was presented with the inverse of that statement: whether the absence of a parallel state court proceeding automatically required the district court to exercise its jurisdiction.  Id.  The court rejected that proposition, holding that "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider."  Id. at 144.  The court did note, however, that just as "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction," so too does the presence of pending state proceedings weigh heavily in favor of declining jurisdiction.  Id.

The Third Circuit thus placed particular emphasis on parallel state proceedings and directed the district courts to "be rigorous in ensuring themselves that the existence [or absence] of parallel state proceedings is outweighed by opposing factors."  Id. at 145.  Put differently, the issue of parallel state court proceedings is paramount in determining whether to exercise jurisdiction under the DJA.

### 3. Analysis

On the facts of this case, there is no serious dispute that the State Suit is a parallel proceeding to the instant declaratory judgment action. This factor strongly militates in favor of abstention.

The Third Circuit has defined a parallel proceeding as "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." Reifer, 751 F.3d at 137 n.9 (quoting Brillhart, 316 U.S. at 495) (internal quotations omitted) (emphasis added). The use of the word "could" in the definition is significant, since it suggests that the subject of—or a party to—the declaratory judgment action need not be presently before the state court in the related proceeding. Specifically in the context of insurance coverage actions, the Third Circuit has held that even when the coverage issue is not presently before the state court, the declaratory judgment action will still be deemed parallel if the coverage issue "will as a matter of logic necessarily arise before the matter is concluded in state court." Atl. Mut. Ins. Co. v. Gula, 84 F. App'x 173, 175 (3d Cir. 2003). It thus follows that the state court action and the declaratory judgment action need not be strictly parallel (i.e., presenting identical claims and involving identical parties) in order for a district court to find that abstention under the DJA is warranted. See Evanston Ins. Co. v. Van Syoc Chartered, 863 F. Supp. 2d 364, 370 (D.N.J. 2012).

The gravamen of the parties' dispute in this case is: (1) whether the damaged building is covered under the insurance policies; and (2) whether the damage complained of constitutes an "occurrence" as that term is defined in the policies. As to the first issue, it is almost certain that the location of the building will be determined in the State Suit, and that determination is necessarily intertwined with whether the building is covered under the insurance policies. With respect to the second issue, an "occurrence" is defined in the policies as, in pertinent part: "an

9

accident, including continuous or repeated exposure to substantially the same general conditions."
(Dkt. No. 16-8, Ex. F, at 20; Dkt. No. 16-10, Ex. G, at 15). Whether the water damage constitutes
an "occurrence" under this definition would most likely require this Court to delve into the nature
of the damage and who (or what) was responsible for it. Clearly, such factual determinations are
central to the issue of liability in the State Suit. The Court thus finds that the issues to be decided
here are inextricably linked to the factual determinations that will be made in the State Suit and,
further, that all issues could be decided in the single state forum. This factor "militates
significantly in favor of declining jurisdiction." Reifer, 751 F.3d at 144-45.

In consideration of the remaining factors outlined in Reifer and Summy, the Court finds
that they do not favor retention of this case. First, it is noted at the outset that federal courts should
be exceedingly cautious in deciding to exercise jurisdiction over declaratory judgment actions
involving a close or unsettled issue of state law. Summy, 234 F.3d at 135. Here, the parties dispute
whether New Jersey insurance law is unsettled with respect to the definition of "occurrence," and
a review of the case law in New Jersey demonstrates that it is not obvious that the issue is settled.
See Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co., 387 N.J. Super. 434, 447-49 (App.
Div. 2006) (finding that faulty subcontractor work did not constitute an "occurrence," but relying
upon case law outside the State). Indeed, the New Jersey Supreme Court has yet to directly address
the issue. Therefore, this factor militates in favor of declining jurisdiction.

As to the other generally applicable factors, none weighs strongly in favor of retaining
jurisdiction. First, the convenience of the parties does not weigh in favor of either retaining or
declining jurisdiction. While Mt. Hawley would certainly find it more convenient to litigate this
case in federal court separate and apart from the State Suit, 1100 Adams obviously would prefer
to litigate in state court in conjunction with the State Suit. Moreover, other measures of

10

convenience to the parties, such as convenience to witnesses and travel convenience, would not seem to militate in favor of either party because of the close proximity of this Court and the Hudson County Superior Court. Second, there does not appear to be any significant public interest at stake in resolving this case—and more specifically, there is no federal interest involved in this case, since it concerns purely questions of state law. Thus, that factor does not support retention of jurisdiction. Finally, other relatively convenient remedies are available, since this declaratory judgment action is capable of resolution in Hudson County Superior Court under New Jersey's declaratory judgment statute.

The insurance-specific factors outlined in Summy all weigh in favor of declining jurisdiction. Summy, 234 F.3d at 134. With respect to the "general policy of restraint" factor, although the legal issues to be decided in this action are not identical to those to be decided in the State Suit, there are certainly factual issues in the State Suit that will bear on Mt. Hawley's duty to defend. That is, the factual determinations that must be made with respect to the nature and cause of the alleged damages will inform the legal analysis of whether there exists insurance coverage under the Mt. Hawley policies. This factor thus counsels in favor of exercising restraint.

Retention of jurisdiction in this case also has the potential to result in duplicative litigation, since there is currently a motion to consolidate this case with the State Suit before the state court that will be decided if this case is remanded. Remand thus would leave open the possibility of consolidation at the state court level (and thus confer the benefits of consolidated discovery), while consolidation would be impossible if this case were retained because there is no basis for federal jurisdiction over the State Suit. Moreover, there is no "inherent conflict of interest" for Mt. Hawley because it has not provided a defense in the State Suit to this point and thus need not make conflicting legal and factual assertions in two separate proceedings.

Therefore, because the Summy/Reifer factors do not significantly outweigh the strong presumption against jurisdiction in light of the pending State Suit—and indeed, also support declining jurisdiction—the Court finds that this case should be remanded.

**III.    CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that Plaintiff 1100 Adams' Motion to Remand be **GRANTED**.

Dated: October 15, 2014                     *s/Madeline Cox Arleo*
                                            **MADELINE COX ARLEO**
                                            **United States Magistrate Judge**

Orig:    Clerk
cc:      Parties
         Judge Wigenton

12